Appendix A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
___HOUSTON___ DIVISION

United States District Court
Southern District of Texas
FILED

FEB 1 4 2014

David J. Bradley, Clerk of Court

___Michael Chaison___ §
§
versus § CIVIL ACTION NO. _____
§
___TPC Group___ §
_____ §
_____ §

### EMPLOYMENT DISCRIMINATION COMPLAINT

1. This action is brought under Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred by Title 42 United States Code, Section § 2000e-5.

2. The Plaintiff is: ___Michael Chaison___

   Address: ___5310 Wildwood Dr.___
   ___Beaumont, TX 77708 (409) 659-6871___

   County of Residence: ___Jefferson___

3. The defendant is: ___TPC Group___

   Address: ___8600 Park Place BLVD.___
   ___Houston, TX 77017___

☐ Check here if there are additional defendants. List them on a separate sheet of paper with their complete addresses.

4. The plaintiff has attached to this complaint a copy of the charges filed on ___June 6th, 2013___ with the Equal Opportunity Commission.

5. On the date of ___November 23, 2013___, the plaintiff received a Notice of Right to Sue letter issued by the Equal Employment Opportunity Commission; a copy is attached.

6. Because of the plaintiff's:

    (a) ☑ race

    (b) ☑ color

    (c) ☑ sex

    (d) ☑ religion

    (e) ☐ national orgin,

the defendant has:

    (a) ☐ failed to employ the plaintiff

    (b) ☐ terminated the plaintiff's employment

    (c) ☑ failed to promote the plaintiff

    (d) ☑ other: failed to grant an accommodation

7. When and how the defendant has discriminated against the plaintiff:

As early as April 23rd, 2013 the defendant treated the plaintiff differently than other persons outside of his protected class. Then the defendant retaliated against the plaintiff by barring promotions.

8. The plaintiff requests that the defendant be ordered:

    (a) ☑ to stop discriminating against the plaintiff

    (b) ☐ to employ the plaintiff

    (c) ☐ to re-employ the plaintiff

    (d) ☑ to promote the plaintiff

(e) ☑ to _grant an accommodation concerning defendants facial hair policy_ _____ and that;

(f) ☑ the Court grant other relief, including injunctions, damages, costs and attorney's fees.

_Michael S. Chaisson_
(Signature of Plaintiff)

Address: 5310 Wildwood Dr.
Beaumont, TX 77708

Telephone: (409) 659-6871

Pg. 3

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | Charge Presented To:<br>[X] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>440-2013-02469<br>Amended |
|---|---|---|

TWCCRD                                                                                    and EEOC
_State or local Agency, if any_

| Name (indicate Mr., Ms., Mrs.)<br>Mr. Michael D. Chaison | Home Phone (Incl. Area Code)<br>409-659-6871 | Date of Birth<br>01/07/1979 |
|---|---|---|
| Street Address<br>5310 Wildwood Dr. | City, State and ZIP Code<br>Beaumont, TX 77708 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>TPC Group | No. Employees, Members<br>500 plus | Phone No. (Include Area Code)<br>(713) 627-7474 |
|---|---|---|
| Street Address<br>8600 Park place Dr. | City, State and ZIP Code<br>Houston, TX 77017 | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).)<br>[X] RACE  [X] COLOR  [X] SEX  [X] RELIGION  [ ] NATIONAL ORIGIN<br>[X] RETALIATION  [ ] AGE  [X] DISABILITY  [X] OTHER (Specify below.)<br>TCHRA | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest                Latest<br>April 23, 2013       Ongoing<br>[X] CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I believe that I have been discriminated against by TPC Group in violation of Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act/ADAAA and the Texas Commission on Human Rights Act, as amended, because of my race (African-American), my color (dark skin), my sex (male), my religion (Christian "The Way of Jesus Christ"), my disability (pseudo folliculitis barbae (PFB) and retaliation for opposing discrimination and a hostile work environment, as evidenced by the following:

1. This is a supplemental Charge of Discrimination being filed to provide additional supporting facts for investigation by the EEOC.
2. I have been employed with TPC Group for four (4) years and ten (10) month as an operator technician.
3. I am an African-American male. I suffer from a disability. The company has failed to provide me reasonable accommodations.
4. I have worn a goatee for the entirety of my tenure with TPC as is evidenced by my hire photo and all other subsequent photo identification. It is an OSHA requirement for employees to pass a respirator fit test once a year in order to work in the industrial facility. I have passed my fit test every year with my facial hair. It has never stopped me from passing my fit test. The fit test is administered at a clinic that has been hired by TPC. I have taken my fit test at this same facility each year.
5. On April 23, 2013, I went to the medical screening clinic to take my annual physical. The respirator test is included in the physical results. I took my fit test with a goatee as I always do and I passed the test. An hour or so later when my physical was complete and I was about to turn in my paperwork and to leave an employee at the clinic took my paperwork and told me that I would have to shave immediately and retake my fit test. He said that he felt my facial hair was too long and that the technician who allowed me to take the test with facial hair was in error. He also stated that my facial hair was not in keeping with OSHA standards. He suggested that I use a razor provided by the clinic. I have never shaved with a razor. I am African American and I am susceptible to forming in-grown hairs if I shave too close especially with a razor. The razor makes the end of the cut hair sharp, this hair

because I am of African descent grows curly and can curve back into the skin which creates sores. This condition is known as pseudo folliculitis barbae. It is disabling and can lead to even more serious conditions.

6. I informed the clinic employee that I had already passed the test. I also stated that I was not going to shave and retake the test. I asked him to produce the OSHA guidelines to show that I was not in compliance. He could not produce any OSHA documentation to support his claim, so I went home. I believe that I was being discriminated against because of my race, color, and disability.
7. On April 24, 2013, at about 9 a.m. I received a phone call from my Supervisor, Ronnie Johnson, (White, male), on my day off. He stated that I needed to go back to the clinic clean shaven and retake the fit test, per his boss Chris Harrison (White, male). I was told by my supervisor that I would not be allowed to come back to work on Friday April 26, 2013, if I did not retake the test clean shaven. I attempted to call Chris Harrison to inquire about why this decision was made. I called him at about 10 a.m. on April 24, 2013, and left a message for him to call me back. He never responded.
8. I called the company nurse Kathy Pierpoline who is in charge of employee physicals to ask why I had to retake a test that I already passed. She stated that TPC management was voiding the test because I was not in compliance with TPC's facial hair policy when I took the test. Not only is the TPC facial hair policy discriminatory but the enforcement of the policy is also discriminatory and racially selective. My deeply held religious beliefs are also is impacted by the decree. Reggie Brasher (White, male) on my shift took his fit test a month earlier in March with facial hair however he was not required to retake the fit test or reprimanded in any way. Randy Parker (White, male) also has worn a goatee for the entirety of my tenure. Scott Schaffner (White, male) who was hired less than a year ago around September of 2012, took his fit test with facial hair not in compliance with TPC facial hair policy. Manfred Wedell (White, male), Jefferey Mahan (White, male), Chris (White, male), David Jackson (White, male), DK (White, male), and Richard Edwards (White, male) are also out of compliance. Furthermore, it is general practice to take your physical on your off day. We work twelve hour shifts so a three (3) hour physical on the same day that you work is not feasible. Employees do not shave on there off days generally especially to the specs of TPC's facial hair policy.
9. I was the only employee who was made to retake the test and threatened with losing my job. I know that I was purposely singled out by TPC management. There is history of TPC management being discriminatory towards African-Americans.
10. The first blatant incident of discrimination that I witnessed was around the summer of 2009 about a year after my employment. Franz Baldwin (Black, male) was terminated, from my understanding he was fired for logging in hours that he supposedly did not work. This may be true, but when an investigation was done it was found that other employees had done the same. Several other operators, Ryan Robinson (White, male), Russell Lejune (White, male), Rodderick Bates (White, male), and others who were all white males kept their jobs. It was standard practice when doing a turnaround to log a few extra hours as a perk of being a coordinator on the turn around. This practice had gone on prior and was just something that management co-signed by turning a blind eye. This was common knowledge. Robin Griffith (White, female) launched the investigation to have Franz fired. I remember hearing a rumor that her subordinate Kevin Bellard (White, male) said something to the effect of, "I got him." He was referring to getting Franz fired, like management was just looking for cause to fire him. If an investigation is done on the termination rate of blacks at TPC you will see that it is grossly disproportionate. Blacks make up about maybe one tenth of the employees at TPC. The termination rate is probably no less than one to one with whites who make up probably more than seven of ten employees. To my recollection four (4) blacks have been terminated and three (3) whites.
11. Statistically, blacks are about six-hundred (600) percent more likely to get fired from TPC. The biggest reason is because TPC management is so predominately white and racist. There are no black supervisors. Qualified blacks put in for management positions but their white counterparts have always been given the job. I have seen no less than four management positions come up and they were all filled with white males.
12. One job was a coordinator position. Russell Lejune (White, male) was awarded the job over Walter Romeo (African-American, male) who had three (3) times more plant experience.
13. The other positions were shift supervisor positions.

14. Furthermore, this is racially motivated under current management.
15. On or about December 2010, a manager, Alan Globke, who sent an email to other white male supervisors stating that, "President Obama would make a good Christmas ornament. Another nigger hanging on a tree." The other managers never reported him to HR. Racism against blacks is so common that the other managers did not even bat an eye at the comments. Globke accidentally forwarded the email to Joe Johnson (African-American). Joe reported the incident. Globke was fired once Joe brought the email to HR, because they simply had no recourse at that time.
16. These examples should illustrate the feasibility of management purposely singling me out because I am African-American.
17. After I obtained representation for the discrimination, TPC management has now tried to force everyone to shave in compliance with this policy thereby causing a backlash to me. This is only being done to cover their tracks because they know that they used the policy disparately to discriminate against me.
18. On or about May 14, 2013, at the shift starter meeting a supervisor Don Burrows stated that he got clarification from upper management on the facial hair policy and that he would be emailing it his subordinates the policy. He said they would have no excuse then. Jeffery Mahan (White, male) stated that he would shave in compliance the next day because he was not in compliance at that moment. This shows that management is making a point to cover their tracks now. I feel that management is just waiting to find a cause to harass me because I am African-American.
19. On April 25, 2013, I returned to the clinic clean shaven in compliance with TPC policy and retook a fit test because I was being threatened with termination if I did not. This caused me extreme discomfort and they rejected my request for reasonable accommodations.
20. As a male employee of TPC Group I am required to shave as a part of their facial hair policy. This practice is intrinsically discriminatory. It is gender biased because the policy states that an employee must be clean shaven below the top lip. Only men grow hair beneath the top lip thick enough to require shaving. The facial hair policy is being written and enforced by a predominately female Human Resources department. The EHSS manager and Human Resource Manager are both women. It does not affect them in any way to produce such a discriminatory facial hair policy.
21. I work about twenty (20) days in a twenty-eight (28) day cycle. This means I must shave constantly. This puts an undue hardship on me as a male employee. Furthermore the policy is arbitrary. My facial hair does not impede me from performing my work task.
22. On April 23, 2013, at about 10 a.m. I took a respirator fit test and passed it with my facial hair. Donning a respirator is the work task that TPC management is using to require that I shave my facial hair. I was told by Chrissy Clifton, the EHSS manager, that shaving is the only way to ensure that I can get a good seal when wearing a respirator so if I wanted to work at TPC I will have to shave. This was after I had passed an OSHA approved respirator fit test with my facial hair. The OSHA fit test uses an electronic meter to measure air leakage when wearing a respirator. The machine has never detected leakage and I have subsequently passed my fit test every year with my facial hair for the past five (5) years straight. I have a document proving that I passed the test. I informed the nurse Kathy Perpoline and Chrissy Clifton that my facial hair is within OSHA guidelines. I was told by both of them that they knew that I had passed my test within the OSHA guidelines but they said they did not care, they were voiding my test. I was told that I had to shave in order to come back to work.
23. Chrissy Clifton said that it is their right as my employer to require me to shave, and that they have the right to go above and beyond OSHA guidelines.
24. This policy is likened to a company having male managers to tell women that they must shave their legs in order to come to work. Since facial hair growth is a male trait I felt like these women were attacking my manhood. The policy is insensitive to men and has nothing to do with job performance and therefore it is discriminatory
25. I have pseudo folliculitis barbae (PFB) it is a skin condition that affects predominately African Americans. Because my hair is curly it is subject to become ingrown when it is cut close (clean shaven). Shaving my face frequently puts me at risk of developing sores. I also have _____ (redacted medical condition), which is a form of _____ (redacted medical condition) that is a mutation of the skin condition known as chicken pox. I had this _____ (redacted medical condition) attack my optic nerve when I was thirteen (13) years old. I was hospitalized for about six (6) days. The _____ (redacted medical condition) is dormant but from my understanding can cause

complications with PFB. I work in a chemical plant and exposure to chemicals can also be a contributing factor to causing PFB, because of these risk factors and the skin on my face being sensitive it compounds my chances of developing this skin condition. PFB can worsen and become keloid. Keloids can in turn become cancerous. I take great care to only shave with an electric razor and I purposely do not shave as close as I can or around my lips or near to them. I try to limit shaving my face and therefore I normally wear a goatee. This is why I adamantly refused to shave with a razor when asked to at the clinic to retake a fit test. A letter was placed in my file on about May 8, 2013, stating that I have been placed on a two (2) year probationary period because I refused to shave with a razor on April 23, 2013, at the clinic to submit to a respirator fit retest. This was a direct retaliation for reporting discrimination.

26. On or about September 2012, I developed a bad sore that was large and painful from shaving. The sore was just above my jaw line. I remember talking to my supervisor about it. I joked that I might call in sick the next day if the sore got any bigger. The joke was about breaking our streak of not calling in. After the discussion I spoke with my Supervisor and told him it was an ingrown hair. He stated that he had that happen to him once before as well. The sore took about three (3) weeks to clear up where it was no longer noticeable. It is because of these facts that I requested a reasonable accommodation to allow me to wear a goatee to work as I have done for the past four (4) years and nine (9) months. I sent this request to Lisa McCourqadale, the Human Resources Manager. To this day I have been forced to be clean shaven below my top lip in order to stay employed with TPC Group. I have not been granted any accommodation for my condition. I have been discriminated against because of my race, religion, color, and disability.

27. I am a follower of, "The Way of Jesus Christ." I believe that Jesus is the embodiment of the word of God. He is the living word of God. I believe that the Bible is the written word of God and I subscribe to a literal interpretation of the Bible. It is my belief and is evidenced clearly that facial hair is a God given trait of a man. I should not look like my children. I have three (3) boys. They do not have facial hair. I believe it is my duty as an adult male believer to have facial hair. It is an outward display of my religion and manhood. It is stated in Leviticus chapter nineteen (19) that a man should not shave the corners of his beard. I believe this to illustrate that a man should have hair on his chin. My goatee forms prominent corners on my chin and I believe this is the way that I should look as a man. A woman, boy, or girl cannot grow a goatee because it is the feature of a man. I believe this feature to be God given. I have been discriminated against because of my religion and gender as well.

28. I reported the discrimination through my attorney on May 3, 2013. I asked implicitly that I not be retaliated against for making this claim. I was subsequently disciplined with a decision making leave form. Despite my attorney's demand the company demanded that I make a pledge to the company to not do anything wrong or make any waves under the threat of being terminated. This condition is supposed to be effective for twenty-four (24) months. This has created a hostile work environment because the write up stated I could be fired for any infraction no matter how minute. I effectively have to walk on egg shells for two (2) years because I could be fired for anything. It is obvious that this write up was produced in order to give my employer leverage to fire me because I stated that I was being discriminated against. I feel that it is a threat in order to stop me from pursuing any claims of discrimination. This is a direct form of retaliation.

29. I received an e-mail that stated I should complete my annual physical by April 24, 2013 or my badge would be deactivated. (See Exhibit 1) I took my physical on the morning of April 23, 2013 and returned to work on the night of April 23, 2013.

30. In the "Decision Making Leave" write up dated May 7, 2013, it is stated in the first paragraph second sentence that my badge was deactivated on 4/23/13 and that I was not allowed to return to work until I completed my exam. This is a total fabrication, how could I badge in to work on the night of April 23, 2013 and badge out of the gate the morning of April 24, 2013 if my badge was deactivated. I work twelve (12) hour shifts from five (5) to five (5). (See Exhibit 2) I have provided the shift turnover that proves I was at work in the VA Olefins unit on the said night. (See Exhibit 3) This is important to show HR has lied about the dates to deflect their real intention for issuing me corrective action in the form of a "Decision Making Leave" form and subsequent twenty-four (24) month probation. I completed my physical and "fit test." I passed both on April 23, 2013. I was not allowed back to work because management would not accept my fit test. I was singled out and forced to shave and retake the

after I had already passed it.

31. I made a request to HR to investigate my discrimination claim on May 3, 2013 through the law offices of James R. Davis. The Decision Making Leave write-up was issued on May 7, 2013 in direct retaliation to my claims of discrimination. (See Exhibit 4) Furthermore, the Respirator Protection Program procedure which I have provided was revised on May 8, 2013, also as a direct retaliation in response to my claims. (See Exhibit 5) It is obvious that the dates were lied about in order to make the write up seem as though it was not retaliatory. In addition, the first sentence of paragraph 5 states that the corrective action was being taken as a "result of your most recent actions and the Written Reprimand administered on April 22, 2013," when I was written up. My claim of discrimination on was sent to Human Resources on May 3, 2013 and I requested a reasonable accommodation on May 6, 2013. I have provided all of the documentation to support this. It is totally illogical that I would be written up on May 7, 2013 for receiving a write up on April 22, 2013. There is no doubt that the statement about my badge being deactivated is a lie, and the question should be raised as to why the opening argument of the DML is based upon a lie. It is such because I was retaliated against purposely and this is also why the Respiratory Protection Program was also revised on May 8, 2013 specifically showing in figure 3 that my facial hair is unacceptable under TPC policy. Figure 3 is almost identical to the goatee that I wear as is evidenced in all of my photographic identification.

32. In the "Decision Making Leave" document paragraph three shows that TPC management was aware of the fact that my facial hair was within OSHA guidelines and that their own admission TPC's policy is more stringent. OSHA is of course the governing body that requires the fit test. The Respiratory Protection Program at TPC shows that facial hair policy is there to ensure that an employee can pass a respirator fit test. I have provided the documentation that I did indeed pass my fit test five consecutive times and never failed a fit test while wearing a goatee. Furthermore, OSHA deems respirator fit as pass or fail. I have provided the 29 CFR 1910.134, which is the code of federal regulations showing that my fit test is compliant with the law and should not have been voided by TPC. The enforcement of TPC's facial hair policy is discriminatory. I am being required to be clean shaven below my top lip which is in line with the corners of my mouth. At the time of this writing there is a white male employee was not in compliance with TPC policy but was not reprimanded and he was allowed to wear his facial hair out of compliance. His name is David Jackson. If a site inspection were to be done Monday through Friday any time between 6am and 3pm any one could ask to see this person and recognize that he has hair that extends from his bottom lip all the way to his chin. It would also be evident that he has had this established hair for quite some time. This shows that the discrimination is ongoing despite the HR departments' best efforts to cover the fact that hardly no one had been in compliance with TPC facial hair policy over the years. There are numerous people that have had this facial hair style their whole tenure. The majority of operators are "in compliance" now only because management has sent emails and made a push to make them comply after I was discriminated against in order to cover up the discrimination. Shift supervisors were told to make sure their people were in "compliance" after I was retaliated against.

33. I was sent an email by HR stating that my request for a reasonable accommodation was found in their junk e-mail on May 28, 2013. I sent the email on May 6, 2013. The email I received stated that I would be able to address this matter the following week. On Saturday May 28, 2013 I was off on vacation. When I returned to work on June 3, 2013 the nurse Kathy Pierpoline called for me to discuss my condition of psuedofolliculitis with her. There was not a representative of HR present at this meeting. I stated the things I was doing to mitigate my condition and she suggested there were medications and tips on the internet to lessen the severity of the symptoms. She acknowledged that this is a true condition. I stated that I was aware of these and that I was taking care of myself as best I could. I pointed out to her that a fellow black employee Erick Hunter had a severe case of PFB and that he went to the doctor and got some medication. The nurse then told me that the facial hair policy was not going to change and that if I wanted to pursue my accommodation for my condition that management is requiring me to go to my own doctor and get a statement saying that I was unable to shave in compliance with TPC policy. She then warned me that if I were to bring back this type of documentation that there was a great possibility that <u>management may not have a position for me</u>. She stated this to intimidate me and it was a direct threat to terminate me if I pursue an accommodation for my medical condition. It is evident that management had a meeting to see how to get around granting

me an accommodation. If you look at the TPC Respiratory Protection Program document 7.1.3 states that TPC would provide a (PARP) respirator if a person could not pass a fit test. This shows that accommodations can be given in regards to using respirators and performing job duties. Also 7.1.5 states another accommodation that can be given. A full face mask would negate the need for a facial hair policy all together. The warning on page 2 also shows that there are other reasons why a full face PARP would be the best solution. If these accommodations are given in the procedure then what is so difficult about granting me an accommodation. TPC Management is unwilling to address these very facts and have continued to discriminate against me.

34. I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, the ADA, as Amended, the ADAAA and the TCHRA. This statement is inclusive of claims but not exclusive of all claims and supporting facts. I will provide additional evidence supporting my claims upon request from the EEOC.
35. I request the EEOC investigate and enforce the statute as required by law.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br>X [signature] |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>X [signature] |
| X 7/5/13    X [signature]<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) X July 5, 2013 |

[Notary seal: GERI MAXWELL, Notary Public, STATE OF TEXAS, My Comm. Exp. Dec. 3, 2014]

EEOC Form 161-B (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Michael D. Chaison<br>5310 Wildwood Drive<br>Beaumont, TX 77708 | From: | Houston District Office<br>Total Plaza<br>1201 Louisiana, Suite 600<br>Houston, TX 77002 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2013-02669 | Jeremy Crosbie,<br>Investigator | (713) 651-4919 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*     NOV 22 2013

R.J. Ruff, Jr.,
District Director     *(Date Mailed)*

Enclosures(s)

cc:    Nancy Patterson
Attorney
MORGAN LEWIS
1000 Louisiana Street, suite 4000
Houston, TX 77002

James Davis
LAW OFFICES OF JAMES R DAVIS
1447 YALE STREET
Houston, TX 77008

Lowell Keig, Division Director
TWC – Civil Rights Division
101 East 15th Street, Room 144-T
Austin, TX 78778-0001