UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CHAISON | § | |
| Plaintiff | § | Civil Action No. 4:14-CV-00377 |
| v. | § | JURY |
| | § | |
| TPC GROUP | § | |
| Defendant | § | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Michael Chaison and for his First Amended Complaint against Defendant, alleges and shows the Court as follows:

### A. Nature of the Case

1.      This is civil action seeking damages against Defendant for committing acts which deprived Plaintiff of rights secured under the Constitution and laws of the United States of America with intent to deny Plaintiff equal protection of the law and other rights and liberties.

### B. Parties

2.      Plaintiff is Michael Chaison, who is a citizen of the United States and who, at all times material hereto, is a resident of Jefferson County, Texas.  Plaintiff is African-American.

3.      Defendant TPC Group, LLC, is a limited liability company organized under the laws of the State of Texas.  Defendant has its principal place of business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan St. Suite 900, Dallas, Texas 75201-3136.

### C. Jurisdiction

4.      Jurisdiction is proper in this Court pursuant to § 42 U.S.C. §2000e-5.

## D. Venue

5.      Venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practice was committed in this district. Plaintiff was an employee of the TPC Group, LLC which is located in this district.

## E. Exhaustion of Administrative Remedies

6.      On May 31, 2013, Plaintiff timely filed a charge of discrimination against Defendant, TPC Group, LLC, with the Equal Employment Opportunity Commission (EEOC), a copy of which is attached hereto as Exhibit A.  In his original charge, Plaintiff alleged ongoing racial, sex, religion, disability and retaliation discrimination.  On July 5, 2013, Plaintiff amended his charge of discrimination.  A true and correct copy of the Amended Charge is attached hereto as Exhibit B.  On November 22, 2013, the EEOC issued to Plaintiff a notice of right to sue on his charge of discrimination and Plaintiff filed the original complaint within 90 days after receiving said notice. A copy of the notice of the right to sue is attached hereto as Exhibit C.

## F. Factual Background

7.      Plaintiff has worked for Defendant for over five (5) years.

8.      Plaintiff is an African-American male who suffers from a condition known as pseudo folliculitis barbae (PFB).

9.      Plaintiff has worn a goatee for the entirety of his tenure with TPC Group, LLC.  It is an OSHA requirement for employees to pass a respirator fit test once a year in order to work in the industrial facility.  Plaintiff passed his fit test every year while maintaining facial hair.

10.      TPC management is predominately Caucasian.  There are no African-American supervisors.  Qualified African-Americans put in for management positions but their Caucasian counterparts are promoted instead.  During Plaintiff's tenure, Plaintiff has witnessed no less than

2

four management positions come up and they were all filled with Caucasian males.[1]

11.     One was a job coordinator position.  Russell Lejune (Caucasian male) was awarded the job over Walter Romeo (African-American male) who had three times more plant experience.  Other positions were shift supervisor positions.

12.     The first blatant incident of discrimination that Plaintiff witnessed was around the summer of 2009, about a year after he began his employment with TPC.  Franz Baldwin, an African-American man, was terminated.  From Plaintiff's understanding, Mr. Baldwin was fired for logging in hours that he supposedly did not work.  This may be true, but when an investigation was done it was found that other employees had done the same.  Several other operators, Ryan Robinson, Russell Lejune, Rodderick Bates and others (all Caucasian males) all kept their jobs, yet Mr. Baldwin was terminated.

13.     On or about December 2010, a manager, Alan Globke (Caucasian male), sent an email to another Caucasian supervisor stating that, "President Obama would make a good Christmas ornament.  Another nigger hanging on a tree".  The other managers never reported him to Human Resources because racism against African-Americans is a norm amongst the managers.  Unfortunately for Globke, he accidentally forwarded the email to Joe Johnson, an African-American.  Mr. Johnson reported the incident to Human Resources and Globke was finally fired.

14.     Plaintiff has Pseudo folliculitis barbae (PFB) which is a skin condition that affects predominately African-Americans.  This condition causes Plaintiff's hair to become ingrown when it is cut close or clean-shaven.  Shaving his face frequently puts Plaintiff at risk of developing sores.  Plaintiff also suffered from chicken pox as a child.  This condition is a dormant condition that Plaintiff has suffered since age 13.  It is Plaintiff's understanding that this

---

[1] See Exhibit D.  Plaintiff is not alone in witnessing the blatant discrimination by the TPC Group.

condition can cause complications with his PFB.  Plaintiff works in a chemical plan and exposure to chemicals can also be a contributing factor to causing PFB, because of these risk factors and the skin on Plaintiff's face being sensitive, it compounds his chances of developing this skin condition.  PFB can worsen and become keloids.  Keloids can in turn become cancerous.  Plaintiff takes great care to only shave with an electric razor and purposely only shaves as close as necessary to prevent complications from his medical condition.  He further tries to limit shaving his face and therefore wears a goatee.  This is why Plaintiff adamantly refused to shave with a razor when asked to at the clinic to retake the fit test.  A letter was placed in Plaintiff's file on or about May 8, 2013 stating that he had been placed on a two (2) year probationary period because he refused to shave with as razor on April 23, 2013, at the clinic to submit to a respirator fit retest.  This was a direct retaliation for reporting discrimination.

15.     On or about September 2012, Plaintiff developed a large and painful sore again from shaving.  The sore was just above his jaw line.  Plaintiff requested a reasonable accommodation to allow him to wear a goatee to work as he has done for the previous four (4) years and nine (9) months.  Plaintiff sent this request to Lisa McCourqadale, the Human Resources manager.  To date, Plaintiff has been forced to be clean-shaven below his top lip in order to stay employed with TPC Group.

16.     On April 23, 2013, Plaintiff went to the medical screening clinic contracted by TPC Group, LLC, to take his annual physical.  The respirator test is included in the physical.  Plaintiff took this annual physical and respirator test with his facial hair as he has in previous years and PASSED the test.[2]

17.     Upon completion of Plaintiff's physical, he turned his documentation into a clinic

---

[2] See Exhibit E.  The FIT test report reveals that on April 23, 2013, Plaintiff took and passed the exam.  A fit test operator signed the report attesting to the same.  No information on the face of the document reveals or suggests that anyone at the Medical Screening Clinic took issue with Plaintiff's facial hair at the time he passed the test.

employee.  This employee informed Plaintiff that he would have to shave immediately and retake the respirator fit test.  The clinic employee also stated that Plaintiff's facial hair was not in keeping with OSHA standards and suggested that Plaintiff use a razor provided by the clinic.

18.     Plaintiff informed the clinic employee that he had already passed the fit test and was not going to shave and retake the test.  Plaintiff further asked the clinic employee to produce the OSHA guidelines he claimed Plaintiff was not in compliance with.  The employee could produce no such documentation.

19.     Plaintiff was ten told by Chrissy Clifton, the EHSS manager, that shaving is the only way to ensure that he can get a good seal when wearing a respirator so if Plaintiff wanted to work at TPC, he would have to shave.  This was after Plaintiff had passed an OSHA approved respirator fit test with his facial hair.  The OSHA fit test uses an electronic meter to measure air leakage when wearing a respirator.  The machine had never detected leakage and Plaintiff passed his fit test every year with his facial hair for the five (5) years preceding this occurrence. Plaintiff informed the nurse, Kathy Pierpoline and Chrissy Clifton that his facial hair is within OSHA guidelines.  He was told by both of them that they knew that he had passed the test within the OSHA guidelines but they said they did not care, they were voiding Plaintiff's fit test. Plaintiff was told that he had to shave in order to come back to work.

20.     On April 24, 2013, Plaintiff was contacted by his supervisor, Ronnie Johnson (Caucasian male), on Plaintiff's day off.  Plaintiff was instructed to return to the medical clinic clean shaven and retake the fit test.  Plaintiff was informed that he would not be allowed to return to work on Friday April 26, 2013 if he did not retake the fit test clean shaven.  Plaintiff attempted to call Mr. Harrison, Mr. Johnson's boss, to inquire about why this decision was made. Plaintiff called Mr. Harrison at about 10:00 a.m. on April 24, 2013, and left a message asking

Mr. Harrison to call him back.  Plaintiff never received a response.

21.    Plaintiff called the company nurse, Kathy Pierpoline, who is in charge of employee physicals to ask why Plaintiff had to retake the test he had already passed.  Ms. Pierpoline stated that TPC management was voiding the test because Plaintiff was not in compliance with TPC's facial hair policy when he took the test.  Not only is the TPC facial hair policy discriminatory but the enforcement of the policy is also discriminatory and racially selective.  Reggie Brasher (Caucasian male), who worked on Plaintiff's shift, took his fit test a month earlier in March 2013 with facial hair, however he was not required to retake the fit test or reprimanded in any way.  Randy Parker (Caucasian male), another co-worker of Plaintiff, also has worn a goatee for the entirety of Plaintiff's tenure with TPC.  Scott Schaffner (Caucasian male), who was hired around September of 2012, took his fit test with facial hair not in compliance with alleged TPC facial hair policy.  Manfred Wedell, Jefferey Mahan, Chris, David Jackson, DK and Richard Edwards were also out of compliance (all Caucasian males). Plaintiff was the only employee who was made to retake the test and threatened with losing his job. Plaintiff feels that he was purposely singled out by TPC management.[3]

22.    On April 25, 2013, Plaintiff returned to the clinic clean shaven in compliance with the TPC policy and retook a fit test because he was being threatened with termination if he did not.  None of his white colleagues were forced to comply with or punished for not adhering to the "policy."

23.    On May 3, 2013, Plaintiff made a request to the Human Resources Department with TPC Group, LLC to investigate Plaintiff's discrimination claims.

24.    On May 7, 2013, Plaintiff received a "Decision Making Leave" write up that

---

[3] See Exhibit F.  Plaintiff is joined by numerous other TPC Group employees who have observed operators with facial hair actively working on the job site.

indicated that his security badge had been deactivated as of April 23, 2013 and that Plaintiff would not be allowed to return to work until Plaintiff complied with the facial shaving and retook his fit test. However, Plaintiff did appear at work, using his security badge, on April 23, 2013 for a 12 hour shift ending and "badging out" on April 24, 2013.

25.     In the "Decision Making Leave" write up dated May 7, 2013, it is stated in the first paragraph that Plaintiff's badge was deactivated on April 23, 2013 and that Plaintiff was not allowed to return to work until he completed the exam.  This is a fabrication as Plaintiff was able to badge in to work on the night of April 23, 2013 and badge out of the gate the morning of April 24, 2013.[4]  Plaintiff provided the shift turnover logs that show he was at work in the VA Olefis unit on the evening of April 23, 2013.  TPC has lied about the dates to deflect their real intention for issuing the corrective action in the form of a "Decision Making Leave" form and subsequent twenty-four (24) month probation.

26.     Counsel sent plaintiff's claim of discrimination letter to Human Resources on May 3, 2013.  Four days later, his facial hair resulted in severe financial punishment by TPC Group.  A Decision Making Leave write-up was issued on May 7, 2013 in direct retaliation to his claims of discrimination.  On that same date, Plaintiff was informed that he would be placed on a Decision-Making-Leave (DML) for his failure to "comply" with the annual fit testing and for attempting to provide knowledge about OSHA standards to the folks employed at the screening center.  In addition, Plaintiff was placed on probation for the period of two (2) years.  In effect, facial hair resulted in a two (2) year probation – a longer probationary period than most first time Driving While Intoxicated offenders receive in Texas.  As of May 8, 2013, the probation period

---

[4] See Exhibit G.  This documents shows that Plaintiff worked for TPC Group on the evening of April 23, 2013 and indicates the general tasks that he performed.

was scheduled to end on May 8, 2015.[5]

27.    On May 7, 2013, Plaintiff again took and passed the exact same respirator test that he previously took and passed on April 7, 2013.[6]

28.    Furthermore, the Respirator Protection Program procedures were revised on May 8, 2013, also as a direct retaliation in response to Plaintiff's claims.  It is obvious that the dates were lied about in order to make the write up seem as though it was not retaliatory. It is such because Plaintiff was retaliated against purposely and this is also why the Respiratory Protection Program was revised on May 8, 2013 specifically showing in figure 3 that Plaintiff's facial hair is unacceptable under TPC policy.  Figure 3 is almost identical to the goatee that Plaintiff wore as is evidenced by all of his photographic identification badges.[7]

29.    After Plaintiff obtained representation for the discrimination, TPC management has now tried to force everyone to shave in compliance with this policy thereby causing backlash to Plaintiff.  This is only being done to cover TPC's tracks because they know that they used the policy disparately to discriminate against Plaintiff.

30.    In the "Decision Making Leave" document, paragraph three shows that TPC management was aware of the fact that Plaintiff's hair was within OSHA guidelines and that their own admission TPC's policy is more stringent.  OSHA is of course the governing body that requires the fit test.  The Respiratory Protection Program at TPC shows that facial hair policy is there to ensure that an employee can pass a respirator fit test.  Plaintiff has passed his fit test five consecutive times and never failed a fit test while wearing a goatee.  Furthermore, OSHA deems respirator fit as pass or fail.  Plaintiff provided the 29 CFR 1910.134, which is the code of federal regulations showing that his fit test is compliant with the law and should not have been voided

[5] See Exhibit H.
[6] See Exhibit I.
[7] See Exhibit J.

8

by TPC.  The enforcement of TPC's facial hair policy is discriminatory.  Plaintiff is being required to be clean shaven below his top lip which is in line with the corners of his mouth.  At the time Plaintiff filed his discrimination charge, there was a Caucasian male employee that was not in compliance with TPC policy but was not reprimanded and he was allowed to wear his facial hair out of compliance.  This employee's name is David Jackson.  If a site inspection were to be done Monday through Friday anytime between 6:00 a.m. and 3:-- .m. anyone could ask to see this person and recognize that he has hair that extends from his bottom lip all the way to his chin.  It would also be evident that he has had this established hair for quite some time.  This shows that the discrimination is ongoing despite the HR department's best efforts to cover the fact that hardly no one had been in compliance with TPC facial hair policy over the years.  There are numerous people that have had this facial hair style their whole tenure.  The majority of operators are "in compliance" now only because management has sent emails and made a push to make them comply after Plaintiff was discriminated against in order to cover up the discrimination.  Shift supervisors were told to make sure their people were in compliance after Plaintiff was retaliated against

31.    TPC Respiratory Protection Program document 7.1.3 states that TPC would provide a (PARP) respirator if a person could not pass the fit test.  This shows that accommodations can be given in regards to using respirators and performing job duties.  Also TPC Policy 7.1.5 states another accommodation that can be given.  A full face mask would negate the need for a facial hair policy all together.  The warning on page 2 also shows that there are other reasons why a full face PARP would be the best solution.  TPC management is unwilling to address these very facts and have continued to discriminate against Plaintiff.

32.    On or about May 14, 2013, at the shift starter meeting, a supervisor, Don

Burrows, stated that he had gotten clarification from upper management on the facial hair policy and that he would be emailing his subordinates the policy.  Mr. Burrows stated they would have no excuse then.  Jeffery Mahan (Caucasian male) stated that he would shave in compliance the next day because he was not in compliance at the moment.  This shows that management was making a point to cover their tracks.  Plaintiff feels that management is just waiting to find a cause to harass him because he is African-American.

33.     As a male employee to TPC Group, Plaintiff is required to shave as a part of their facial hair policy.   This practice is intrinsically discriminatory.  It is gender biased because the policy states that an employee be clean shaven below the top lip.  Only men grow hair beneath the top lip thick enough to require shaving.  The facial hair policy is being written and enforced by a predominately female Human Resources department.  The EHSS manager and Human Resource manager are both women.  It does not affect them in any way to produce such a discriminatory facial hair policy.

34.     Plaintiff works about twenty (20) days in a twenty-eight (28) day cycle.  This means Plaintiff must shave constantly.  This puts an undue hardship on Plaintiff as a male employee.  Furthermore, the policy is arbitrary.  Plaintiff's facial hair does not impede him from performing his work task.

35.     Chrissy Clifton told Plaintiff that it is their right as his employer to require him to shave, and that they have the right to go above and beyond OSHA guidelines.

36.     This policy is likened to a company having male managers to tell woman that they must shave their legs in order to come to work.  Since facial hair growth is a male trait, Plaintiff feels like these women were attacking his manhood.  The policy is insensitive to men and has nothing to do with job performance and therefore it is discriminatory.

37.     Plaintiff reported the discrimination through his attorney on May 3, 2013. Plaintiff asked implicitly that he not be retaliated against for making this claim.  Plaintiff was subsequently disciplined with a decision making leave form.   Despite Plaintiff's attorney's demand the company demanded that Plaintiff make a pledge to the company to not do anything wrong or make any waves under the threat of being terminated.  This condition is supposed to be effective for twenty-four (24) months.  This has created a hostile work environment because the write up stated that Plaintiff could be fired for any infraction no matter how minute.  Plaintiff effectively has to walk on egg shells for two (2) years because he could be fired for anything.  It is obvious that this write up was produced in order to give Plaintiff's employer leverage to fire him because he stated that he was being discriminated against.  Plaintiff feels that it is a threat in order to stop him from pursuing any claims of discrimination.  This is a direct form of retaliation.

38.     On October 11, 2013, approximately three (3) months after filing an EEOC claim, Plaintiff was issued an "Addendum to Decision-Making-Leave (DML)."  In the addendum, a Human Resources employee wrote the following:

> "On September 11, 2013, you were found asleep in a chair in the control room.  Shortly thereafter an investigation was done to obtain your side of the story as well as to interview those present at the time.   Our investigation concluded that you were in fact asleep and had to be woken up by Supervisor, James McNeil.  Additionally, the investigation revealed that TPC's practice of handling similar situations has not been consistent.  For this reason, you were not terminated and were allowed to return to work."

What was left out by TPC was that it is a very normal occurrence for an employee to sit at their desk and close their eyes during a break period.  An employee can do whatever he or she chooses to do during their break period.  Plaintiff simply chose to close his eyes.[8]

39.     Hair and the closing of one's eyes is apparently frowned upon by the TPC Group.

---

[8] See Exhibit K.

But if you are an African-American employee, you are not only frowned upon, but you can also be placed on probation for two (2) years.  The addendum issued on October 11, 2013, acted to extend the two (2) year period of the initial DML that was issued on May 8, 2013.  Thereby, the removal date shifted back to October 11, 2015.

40.     Shortly after receiving the probation extension, Plaintiff met with TPC Human Resources employees to discuss his punishment.  Plaintiff maintains an audio recording of that conversation.  During that conversation, Plaintiff was told the following by TPC management:

**Mgmt:**  "You are smart so listen to what I'm saying, the investigation uncovered other instances where people were sleeping."

**Plaintiff:**  "My boss saw other employees who were white sleeping but he targeted me."

**Mgmt:**  "I understand."

**Plaintiff:**  "He has a history of targeting blacks for disciplinary actions.

**Mgmt:**  "Like I said, we are dealing with it.  That has nothing to do with you.  I understand your concern and I hear your opinion and that is fine."

**Mgmt:**  "A picture of another employee sleeping was taken a year ago.  Going forward now, we are going to be a little more consistent about handing out discipline for sleeping."

**Plaintiff:**  "But you are starting my probation over for another twenty-four (24) months."

**Mgmt:**  "That's right.

**Mgmt:**  "In our investigation, nobody has denied that you are a good operator.  You do your job. You do your job well and everyone is happy with your work.  How do we keep you from putting yourself in positions like this?

**Plaintiff:**  "From being targeted?"

**Mgmt:**  "The accusations you are making are pretty deep and we can't get down to the bottom of them today."

41.     Apparently Plaintiff's accusations truly were deep.  Based upon information and belief, Plaintiff's supervisor James McNeil, was recently terminated following the results of an independent investigation.  He was found to engage in racially motivated tactics during his supervision of employees. However, Plaintiff remains on probation.

42.     The effect of these discriminatory probations is obvious and cannot be underestimated. Policies have been manipulated and put in place solely to target the Plaintiff in an act of retaliation by the TPC Group.  At TPC, promotions are governed by a document titled, "Operator Technician Progression."[9]  The document identifies three important items:  the different positions that can be held by TPC operators, the minimum requirements necessary to be promoted from one position to the next, and the hourly increase in rate of pay from each position to the next.  On April 23, 2013, Plaintiff was an "Operator Technician III."  As a result of the two-year probation, Plaintiff cannot be promoted until October 2015.  He must sit back and watch his white counterparts, who have been employed for a much shorter period of time with TPC, enjoy the benefits of promotion.

43.     Hair and closing your eyes at TPC equates to two (2) years probation and absolutely no opportunity to promote within the company.  Any complaints of discrimination result in either a policy change directly targeted at the complainant or punishment for such a complaint or both.  Plaintiff has unfortunately endured both at the hands of TPC.

## G.  Discrimination Under Title VII

44.      Plaintiff incorporates by reference all the factual allegations contained in paragraphs 1 to 43 herein.

45.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Plaintiff is African-American.

46.     Defendant is an employer within the meaning of Title VII.

47.     On May 31, 2013, Plaintiff has complied with all pre-requisites for bringing an

---

[9] See Exhibit L.

action under Title VII in that Plaintiff timely filed a claim of discrimination with the EEOC, alleging that he had repeatedly been discriminated against.

48.     Plaintiff was at all times relevant hereto performing his job satisfactorily.

49.     Plaintiff has experienced an adverse employment action in that he is being denied promotions to jobs with higher pay.

50.     Similarly situated employees have not been reprimanded and denied promotion although they have also been in violation of the facial hair policy or have allegedly been sleeping on the job.

## L. Relief Requested

51.     The preceding factual statements and allegations are incorporated by reference.

52.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages:

a)      Actual damages which Plaintiff has suffered as a result of Defendant's actions and omissions.

b)      Plaintiff has suffered loss of his ability to contribute to his retirement;

c)      Plaintiff suffered mental anguish and emotional distress as a result of Defendant's unlawful and discriminatory conduct; and

d)      All damages sustained by Plaintiff were reasonably foreseeable by Defendant, and were caused by Defendant.

## M. Punitive Damages

53.     The wrongful actions and/or inaction of Defendant were committed intentionally, willfully, with malice and/or with reckless disregard for Plaintiff's rights and interests. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant both as

punishment and to discourage such wrongful conduct in the future.

## O. Attorney Fees

54.     Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k), ADA 42 U.S.C. §12101, et seq.

## P. Jury Demand

55.     Plaintiff respectfully demands trial by jury and has tendered the appropriate fee for same.

## Q. Prayer

56.     WHEREFORE, Plaintiff respectfully requests Defendant be cited to appear and answer herein, and that upon final trial hereof, the Court award the following against:

     a.     All actual damages due to him under the law, including but not limited to back pay, front pay and compensation for past, present and future lost benefits;

     b.     Damages for mental anguish;

     c.     Punitive damages;

     d.     Compensatory damages;

     e.     Reasonable attorney fees;

     f.     Costs of suit; and

     g.     All other relief the court deems appropriate.

Respectfully submitted,

**THE BERNSEN LAW FIRM**

Christine L. Stetson
Texas Bar No. 00785047
USDC SDTX Bar No. 17641
cstetson@bernsenlaw.com
Ryan MacLeod
Texas Bar No. 24068346
USDC SDTX Bar No. 2164813
rmacleod@bernsenlaw.com
420 N. MLK, Jr. Pkwy
Beaumont, Texas  77701
409/212-9994 – Telephone
409/212-9411 – Facsimile

ATTORNEYS FOR PLAINTIFF